Lawrence *v.* Maxwell.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham*, P. J. and *Cardozo*, Justice.]

LAWRENCE *vs.* MAXWELL.

In an action against a broker, to recover damages for the conversion of shares of stock alleged to have been deposited with him as security against loss on purchases and sales of gold, for account of the plaintiff, the latter testified that the pledge of stock was made merely to secure a margin. The defendant swore that he required a margin of ten per cent, which he expected to receive in money, but that after the purchase of the first $100,000, the plaintiff inquired if he could not use the stock, instead of the money, and the defendant consented to take it. *Held* that by the proposition to give the defendant the stock instead of the money, and for its use by the defendant, it was clear that the intent was that the defendant should use the stock as he might lawfully have used the money; and that for doing so, he was not liable, in an action of tort.

*Held, also*, that as the statements of the parties were contradictory, it came within the province of the jury to decide which was the contract between them; and the judge could not take that question from the jury.

*Held, further*, that an offer to show that, before this transaction, shares had been deposited with the defendant, and he had hypothecated the same, and that such use of the stock being communicated to the plaintiff he made no objection thereto, should have been admitted, as showing the construction of the contract by both parties. And that it was properly for the consideration of the jury, in determining what the terms of the contract were. CARDOZO, J., dissented.

That although by the contract as stated by the defendant he had a right to use the stock in the same manner as the cash, had that been deposited, he was bound by his contract to return the stock whenever the plaintiff tendered the amount due to him, for which it had been pledged.

That upon a tender being made, it was the duty of the defendant, at once, or within a reasonable time, to restore the stock; and that having failed to do

so, the plaintiff was entitled to recover, on the contract, its value. But that if the defendant, by the contract, had the right to use the stock, by hypothecation, there was no tort committed by the omission to restore it, and the plaintiff's remedy was on the contract, and not for the conversion.

THIS action was brought to recover damages·for the conversion of four certificates of Atlantic Mail Steamship Company's stock, each for 100 shares, which the plaintiff, in his complaint, alleged had been deposited with the defendant on or about the 21st of December, 1866, as security against any loss which the defendant might sustain on purchases and sales of gold coin, to be made for account of the plaintiff. He alleged that the transactions for which the certificates had been deposited were closed, and the defendant had rendered an account showing due to him $11,600.22; that the plaintiff had tendered this amount, and demanded the return of the said certificates, or the transfer to the plaintiff of said 400 shares of stock, or of a like number of such shares, which the defendant had failed to do.

The defendant denied that he held the same solely as security against loss on such purchases and sales of gold coin, but insisted that he held it as security against all indebtedness of the plaintiff to him, and for all moneys due or to become due to him in the course of his transactions with the plaintiff, and alleged that at the time of such tender and demand there were other transactions and accounts between the parties pending and unsettled, and that at such time there was a much larger sum than $11,600.22 due to the defendant. The defendant also alleged that he received said securities for the purpose of enabling him to raise money thereon, and that by a well-known custom and usage he was authorized and entitled to use, hypothecate, or otherwise dispose of them, and that the plaintiff was aware and cognizant of such usage. The answer denied any wrongful or fraudulent conversion or disposition of the said securities. The action was tried at

Lawrence v. Maxwell.

a circuit court, before Justice BRADY and a jury in June, 1870. The plaintiff was the only witness called to prove what took place at the time of the defendant's employment. His statement is as follows: " On December 20th, 1866, I called at the office of Mr. Maxwell, and stated that I desired to sell $100,000 gold, and asked him if he would sell it for me, and that I would leave Atlantic Mail stock as security. He said he would. I asked him how much he wanted. He said leave him 200 shares." * * The gold was sold, and subsequently a purchase of a corresponding amount of gold to cover the sale was made. The plaintiff then says: " Two days afterwards, December 26th, I called, and asked Mr. Maxwell to sell again $200,000 gold. The next day he reported sale. A few days afterwards, December 31st, I called and said to him that I desired to sell some more gold, and asked him whether he wanted any further security than the 200 shares of Atlantic Mail I had left him before. He said yes, he ought to have. I asked him how much. He said I had better leave him 200 more, which he knew I had. I said very well, give the order for sale and I will get the securities. I went and got the securities, brought and delivered them to him, making 400 in all."

This was all the testimony on the part of the plaintiff in regard to the original transaction.

The plaintiff further stated that all the gold which Maxwell was ordered to sell, was sold short—that the plaintiff had none of it to deliver—and that Maxwell furnished or procured the gold to make the deliveries with. It was proved that the gold transactions resulted in a loss of $11,600.22, and that that amount was tendered, and the demand made as alleged in the complaint.

The defendant gave this account of the transaction: "I was in the Stock Exchange when the plaintiff came over to the railing and told me he wanted to have some

transactions in gold, and he wanted to know what margin I required. I told him ten per cent. He told me to sell $100,000 gold, which I did. He came back again, and afterwards asked me if I could use Atlantic Mail just as well; if it would suit my purpose it would be much more convenient for him. * * * He asked me what margin I wanted, and I told him ten per cent, thinking I was to get the money. I sold the gold and reported to him; he came back to me and asked me if I could use Atlantic Mail just as well as the money; if it would suit my purpose it would be very convenient to him. I took the shares. I was disappointed that I did not get the money." The defendants offered to show that to make the deliveries of gold sold short, he was, by custom and usage, compelled to borrow the gold, and to raise the money and pay for it at the time it was borrowed. He also offered to show that money paid to a broker as margin is not kept separate and distinct from other moneys, but is mixed up with his own as his business requires. Also to show a custom and usage by which a broker is authorized to hypothecate or otherwise use securities received by him as margin on transactions like those in question, and that the plaintiff had knowledge of such custom. Also to show a custom and usage by which brokers are authorized to retain all the securities in their hands at any time, as security for all moneys due them. And that in previous transactions, the securities deposited with him by the plaintiff as margin on gold and stock transactions, had been hypothecated and used by the defendant, and that the plaintiff had knowledge thereof. It was proved in this connection that when the plaintiff was informed that 200 of the shares of the stock in suit had been used by the defendant, he made no objection, and found no fault. On the question of damages, the defendant offered to show that the stock in question was a fancy stock, having no other value than was given to it by speculation, and that it fluctuated from

fifty to seventy-five per cent in the course of five or six months. Which offer was refused.

The evidence being closed on both sides, the court decided that there was no question to go to the jury, and that on the evidence the plaintiff was entitled to a verdict, and to recover as damages the highest market value of the stock since January 26th, 1867; which was stated by the witness Lockwood to have been 121; and that the plaintiff was therefore entitled to a verdict for the sum of $48,400, and directed the jury to find such verdict accordingly. The defendant excepted. The jury, under the direction of the court, rendered a verdict for the sum of $48,400, (making no deduction or diminution on account of the $11,600.22 due to the defendant.)

The court ordered the exceptions to be heard in the first instance at a general term, and that judgment be, in the meantime, suspended.

*W. W. Macfarland,* for the plaintiff.

I. The common law duty of a pledgee is to restore the thing pledged when the pledgor offers to redeem and perform the obligation, whatever it may be, to secure the performance of which the pledge was made. (*Edwards on Bailment,* 91, 129.)

II. A custom or usage in derogation of the common law is void. (*Firth* v. *Barker,* 2 *John.* 327. *Brown* v. *Jackson,* 2 *Wash. C. C.* 24. *U. S.* v *Buchanan,* 8 *How.* 83, 102. *West* v. *Ball,* 12 *Ala.* 340, 347. *Dewees* v. *Lockhart,* 1 *Texas,* 535, 537. *Rapp* v. *Palmer,* 3 *Watts,* 178. *Beirne* v. *Dord,* 1 *Seld.* 102. *Sweet* v. *Jenkins,* 1 *R. I.* 147. *Singleton* v. *Hilliard,* 1 *Strob.* 203, 216. *Snowden* v. *Warder,* 3 *Rawle,* 101. *Hinton* v. *Docke,* 5 *Hill,* 437. *Strong* v. *Bliss,* 6 *Metc.* 393. *Donnell* v. *Columbia Ins. Co.,* 3 *Sumner,* 367, 377. *Coxe* v. *Husley,* 3 *Penn.* 246. *Wheeler* v. *Newbould,* 16 *N. Y.* 393. *Markham* v. *Jaudon,* 41 *id.* 239.)

1. The Court of Appeals, in the recent case of *Markham*

Lawrence *v.* Maxwell.

v. *Jaudon*, have affirmed this rule of law, and applied it to a' case of much more doubtful complexion than the one at bar. In that case the property converted was purchased by the broker, in his own name, with his own money, but on account of the principal, who had deposited a margin to secure the broker against loss; the broker having sold without authority or notice, sought to defend on the ground of an existing custom to sell in like manner in such cases. This was held not to be admissible. In the case at bar the defendant had nothing to do with the acquisition of the property in question. In the execution of the commission intrusted to him he might incur a certain amount of liability equivalent to the difference in the price of gold from day to day, or that difference might be productive of a profit. But to secure the payment in money of the amount of any loss that might result on closing the transaction, the stock in question was pledged, and for no other purpose. 2. It would be sufficiently absurd to hold that the plain principles of the common law applicable to such a state of facts, might be overcome and set at nought by proof of a local usage of brokers to sell or hypothecate property so pledged, in order to raise money for the particular transaction undertaken upon the security of the pledge; but this stock was pledged to raise money generally for the defendant, as he himself says.

III. None of the defendant's objections were well taken. 1. Proof of the market value of the stock on the 2d of December, 1867, was admissible. (*Burt* v. *Dutcher*, 34 *N. Y.* 493.). 2. Proof that the stock was a "fancy stock" was not admissible, as it had no tendency to disprove its market value, or lessen the plaintiff's actual loss. 3. Proof that it was difficult to raise money on this stock, was not admissible. The plaintiff did not seek to raise money on it, and the defendant had no right to raise money on it. The fact was in nowise involved in the issue. 4. Proof that the defendant had to borrow the gold, and for that

Lawrence *v.* Maxwell.

purpose had to furnish money, was not admissible, for it had no tendency to prove a rightful appropriation of the plaintiff's stock; and because it was immaterial what means the defendant adopted to the end of performing the duty he had undertaken, provided he did not, for that purpose, wrongfully convert the stock pledged. 5. Proof as to the use made by a broker of money paid in as a margin, was obviously immaterial and inadmissible, having no relation to the issue. 6. Proof of a local customary lien in favor of brokers upon all securities in their hands, for any moneys due, growing out of transactions in their office, was not admissible. (*a.*) Because there was no state of facts proved to which it could possibly apply. There was no money due the defendant, except the money tendered previous to the commencement of this action. (*b.*) Because the common law defines the right of lien in such cases, which cannot be changed or modified by usage in a particular locality. 7. Evidence was not admissible to prove knowledge of the plaintiff that the defendant had hypothecated other securities pledged to the defendant by the plaintiff in other transactions. (*a.*) Because if pledged without the plaintiff's consent, but returned to the plaintiff upon demand, at the expiration of the time limited, the plaintiff had no cause of complaint. (*b.*) Because if pledged with the plaintiff's permission, it affords no argument in support of the right to pledge without permission. (*c.*) If the plaintiff had known of and excused one conversion, a right to commit another wrong could not be predicated upon the fact. Therefore the evidence was not, and could not have been admissible. 8. A conclusive answer to the last objection, and also to the objection last considered, is that it did not tend to prove any previous agreement or subsequent assent to the hypothecation of the stock in question, and its conversion by the defendant. The defendant's pledge of this stock for any purpose was without authority, and a flagrant

breach of his duty. If his means were so limited that he required ready money to carry on the transaction, he should have said so. But when he undertook to carry it on upon a pledge of personal property, to secure himself against loss in the end, nothing but *vis major* can excuse him from restoring it. If the plaintiff had desired to have the stock converted into money, he would have chosen his own time and method of doing so.

*John E. Burrill,* for the defendant.

I. The court erred in excluding the defendant's offer to show a custom and usage by which brokers are authorized to hypothecate or otherwise use securities received by them as margin on transactions, like those in question. 1. The evidence did not tend to vary or alter any contract actually made between the parties, or to overrule any rules of law prescribing its effect, but was for the purpose of ascertaining what the contract was. 2. In the cases in which evidence of custom has been excluded, the contract was definitely and precisely ascertained, and the custom sought to be introduced, tended to change its terms or alter its legal effect. 3. In most of the cases the contract between the parties or the relations existing between them were defined by a written instrument, and where such was not the case, they were definitely fixed and ascertained by other legal evidence. 4. In the present case, at the time the evidence was offered, not only was the testimony on the part of the plaintiff loose and indefinite and lacking in precision, but there was a difference between the version of the transaction given by the plaintiff and that given by the defendant. 5. The evidence was competent to cover any points which the parties in their conversation had left open, and was also competent to show that the version of the transaction given by the defendant was correct. 6. Maxwell had testified that the plaintiff asked him if he could use the Atlantic Mail

Lawrence *v.* Maxwell

Stock just as well as the ten per cent, or money, which had been originally spoken of. * * * Maxwell had also testified that he was disappointed in not receiving the money, * * * and we offered to show that it was difficult to raise money on the stock, and hence his disappointment. In this state of the evidence, our offer to show that, by the custom and usage, we were entitled to use the stock by hypothecation or otherwise, was competent, and tended to show that the plaintiff intended that it should be, and knew that it would be so used. 7. In this connection attention is called to the allegation in the complaint, that the plaintiff when making his tender demanded a transfer of the four hundred shares, or of a like number of such shares. 8. Evidence of the custom in question was not offered to show, nor did it tend to show, that the legal ownership of the plaintiff's stock had become vested in Maxwell, or to exonerate Maxwell from his legal liability to account for the stock, but merely, while conceding the responsibility of the defendant, and his liability to account to the plaintiff for and in respect to the stock, to show that he was not guilty of a fraudulent conversion, or liable as a wrongdoer. Such evidence went to show, that although liable to account for the value of the stock in another form of action, the defendant was not liable in this. This is not in conflict with the principle laid down by the authorities so far as they have come to our knowledge. 9. If the plaintiff had consented to the use of the securities by the defendant, there was no conversion. The plaintiff is presumed to have contracted with reference to the usages of the business, and the evidence was competent to show implied assent. 10. There is nothing unreasonable in the custom and usage sought to be shown.

II. The principles decided in the following cases justify the reception of the evidence. (*Markham* v. *Jaudon*, 41 *N. Y.* 239, 252, 246. *Beardsley* v. *Davis*, 52 *Barb.* 164.

*Helme* v. *Ins. Co.*, 61 *Penn.* 107.) These cases show with clearness, the circumstances under which custom is admissible, and the ground on which, and when, it is admissible. (*Horton* v. *Morgan*, 19 *N. Y.* 170. *S. C.*, 6 *Duer*, 61.) Evidence of a custom that brokers only, and not their customers, are known in transactions at the board, was received. In the same cases, evidence of usage among brokers to take the title to stock purchased in their own name was received to show that the broker was not guilty of conversion. *Whitehouse* v. *Moore*, (13 *Abb. Pr.* 143,) and *Peckham* v. *Ketchum*, (5 *Bosw.* 506,) lay down the same propositions. Where there is nothing in the agreement to exclude the inference, parties are presumed to contract in reference to the usage or custom, and usage is admissible to explain the intention. (*Wadsworth* v. *Allcott*, 6 *N. Y.* 64.) In *Esterly* v. *Cole*, (3 *N. Y.* 502,) evidence of a usage to charge interest on an open running account was admitted; and it was there held that where there is a general usage in any particular trade to charge or allow interest, parties having knowledge are presumed to contract with reference to it; and, if the usage does not conflict with the terms of the contract, it will be deemed to enter into and constitute a part of it. In *Hinton* v. *Locke*, (5 *Hill*, 438, 439,) in an action on a contract to pay twelve shillings per day for each man, evidence of usage was admitted to show that ten hours' labor constituted a day's work. In *Fox* v. *Parker*, (44 *Barb.* 541,) evidence of a usage in the business of selling paper was admitted, on the ground that it was proper to intepret by usage the otherwise undetermined intentions of parties, and to ascertain the nature and extent of their contracts arising, not from stipulations, but from mere implications and presumptions, and acts of a doubtful character. (*See also Smith* v. *Marvin*, 27 *N. Y.* 140.; *Suydam* v. *Westfall*, 4 *Hill*, 211; *Dunham* v. *Pettee*, 1 *Daly*, 112; *Ely* v. *New Haven Steamboat Co.*, 53 *Barb.* 207; *Gibson* v. *Culver*, 17 *Wend.* 305, *and authorities cited*

*in* 2 *Pars. on Cont.* 186–196 ; *Stanton* v. *Small,* 3 *Sandf.* 230.) In *Pollock* v. *Stables,* (12 *Q. B.* 765,) evidence was admitted to show the rights and obligations of brokers in respect to the purchase of stocks. 2 *Parsons on Contracts,* 535–546, contains numerous authorities in support of our proposition. *Story on Agency,* 98, 249, and 1 *Parsons on Contracts,* 54–61, lay down the rule, supported by numerous authorities, that the authority and duty of the agent are determined by reference to usage and custom.

III. Evidence of usage, to show that by the custom the broker alone was known in the transaction, and was obliged to provide the means and pay for the gold, was improperly excluded. (*Horton* v. *Morgan,* 19 *N. Y.* 170. *Whitehouse* v. *Moore,* 13 *Abb. Pr.* 143. *Peckham* v. *Ketchum,* 5 *Bosw.* 506. *Pollock* v. *Stables,* 12 *Q. B.* 765.)

IV. The evidence of the usage, to show the right of the defendant to retain the stock as security for all other transactions, was improperly excluded. (*Ex parte Deeze,* 1 *Atkyns,* 228. *Ex parte Ockenden, Id.* 234.)

V. Irrespective of such evidence, the defendant was entitled to hold the stock as security for such transactions, and the plaintiff not having tendered to the defendant the amount of the loans made by him to the plaintiff, was not entitled to receive the stock, and the defendant was not guilty of a conversion. (1 *Pars. on Cont.* 262 *and notes.*)

VI. The evidence to show that in previous transactions between the plaintiff and Maxwell, of a similar nature to those in controversy, and under like circumstances, the defendant had used securities received by him from the plaintiff, and that the defendant had knowledge thereof, was erroneously excluded. It was competent to show an implied assent to the use of the securities on the present occasion, and to show that such use was not wrongful or fraudulent. Had the plaintiff consented expressly to such use, there was no conversion, and evidence of any fact

from which such assent might be inferred or implied was competent.

VII. At all events, the evidence of such use by the defendant on previous transactions, with the knowledge of the plaintiff, in connection with the evidence that such use was in accordance with the custom, was competent to show that the disposition of these securities by the defendant was not wrongful.

VIII. The evidence did not justify the court in directing a verdict for the plaintiff, but the same should have been submitted to the jury to determine what the agreement was, and also on the question whether the plaintiff had acquiesced in the use of the stock. .

IX. The court erred in respect to damages. 1. The plaintiff was not entitled to the highest market value of the stock. 2. No allowance was made to the defendant for the amount actually due him on the transaction for which he held the stock as security, viz., $11,600.22, and interest from January 19, 1867.

INGRAHAM, P. J. Different versions of the contract are given by the plaintiff and the defendant, in their evidence on the trial. According to the plaintiff's evidence, the pledge of the stock was merely made to secure a margin, and if correct, the case would come within the rule as laid down in *Markham* v. *Jaudon*, (41 *N. Y.* 239,) and the same could not be used by the broker. According to the evidence of the defendant, he required a margin of 10 per cent. This he expected to receive in money; but after the purchase of the first $100,000, the plaintiff applied to him and inquired if he could not use the stock, instead of the money, and the defendant consented to take it. By the proposition to give the defendant the stock instead of the money, and for its use by the defendant, I think it clear that the intent was that the defendant should use the stock as he might lawfully have used the money, and that for

Lawrence *v.* Maxwell.

such a course the defendant would not be liable in an action of tort.  As these statements were contradictory, it came within the province of a jury to decide which was the contract between the parties; and the judge could not take that question from the jury.  The offer to show that before this transaction shares had been deposited with the defendant, and he had hypothecated the same, and that such use of the stock was communicated to the plaintiff, who made no objection thereto, should have been admitted, as showing the construction of the contract by both parties; and was properly for the consideration of the jury in determining what the terms of the contract were.

Although by this contract as stated by the defendant, he had a right to use this stock in the same manner as the cash, if that had been deposited, he was bound by his contract to return the stock whenever the plaintiff tendered the amount due to the defendant, for which it had been pledged.  When the tender was made, it was the duty of the defendant at once, or within a reasonable time, to have restored the stock.  This he failed to do, and the plaintiff was entitled to recover, on the contract, its value.  But if the defendant, by the contract, had the right to use the stock, by hypothecation, there was no tort committed by the omission to restore it, and the plaintiff's remedy was on the contract, and not for the conversion.

The verdict should be set aside and a new trial ordered.

GEO. G. BARNARD, J., concurred.

CARDOZO, J. (dissenting.)  I think the offers on the trial, on the part of the defendant, were properly excluded.  The transaction made him a pledgee of the stock, and evidence of custom is not admissible to change his liabilities and duties as such.  (*Markham* v. *Jaudon*, 41 *N. Y.* 236.)

But the court erred in directing a verdict for the whole

amount of the value of the stock. The plaintiff was indebted to the defendant upon the transaction upon which the stocks were pledged, in $11,600.22, and that amount should have been deducted from the recovery which the plaintiff would otherwise have been entitled to. (*See Leslie* v. *Hoffman, Edm. Select Cases,* 475.)

If the plaintiff stipulates to deduct that sum, the exceptions should be overruled, and judgment for the difference ordered on the verdict; otherwise a new trial should be ordered.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham,* P. J., and *Cardozo* and *Geo. G. Barnard,* Justices.]